IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **PAMELA TERRELL**, on behalf of herself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) No: _____ ) |
| v. | ) CLASS ACTION ) |
| **AMBASSADOR PERSONNEL, INC.**, **NASHVILLE WIRE PRODUCTS MANUFACTURING COMPANY, LLC,** and **MID-SOUTH WIRE COMPANY, LLC**, | ) ) JURY DEMAND ) ) ) ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Pamela Terrell, on behalf of herself and all others similarly situated, alleges as follows:

### I. NATURE OF THE ACTION

1. This is a class action for equitable relief and damages for unlawful employment practices on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.* ("THRA").

2. As set forth in detail below, Defendants unlawfully, intentionally, and discriminatorily refused to hire Plaintiff Pamela Terrell and other female job applicants based on their sex and sex stereotyping of women as being unable to perform physically demanding work.

3. Ms. Terrell's claims are based on direct evidence of intentional sex discrimination and sex stereotyping. Defendants Nashville Wire Products Manufacturing, LLC and Mid-South

1

Wire Company, LLC explicitly stated, "I am not usually successful with ladies in this position," and, "I don't want to get someone hurt and I am afraid that's what is going to happen." Defendant Ambassador Personnel, Inc. promoted and continued this intentional discrimination, stating, "We aren't sending any [female] candidates that aren't what the client needs," and calling its intentional discrimination a "mitigated risk" justified by its own bottom line.

4. Defendants have violated the principles of equality, opportunity, and free choice at the heart of Title VII by engaging in an intentional and systematic practice of discriminating against women. This action seeks to redress these wrongs on behalf of Ms. Terrell and other similarly situated women.

## II.     JURISDICTION & VENUE

5. This Court has original subject matter jurisdiction over Title VII claims pursuant to 28 U.S.C. § 1331, because they arise under the laws of the United States.

6. This Court has supplemental jurisdiction over THRA claims pursuant to 28 U.S.C. § 1367, because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

7. This Court has personal jurisdiction over Defendants because they are business entities organized under the laws of the state of Tennessee, are headquartered and/or operate physical locations and employ workers in Tennessee, and/or conduct business throughout Tennessee.

8. A substantial part of the events or omissions giving rise to these claims occurred in Davidson County, Tennessee, within this judicial district. Therefore, proper venue for this action

lies within the Middle District of Tennessee pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).

### III. ADMINISTRATIVE PREREQUISITE

9. Ms. Terrell has exhausted administrative remedies and complied with all statutory prerequisites to her Title VII claims.

10. Ms. Terrell filed charges of discrimination individually and on behalf of all other similarly situated workers with the U.S. Equal Employment Opportunity Commission ("EEOC") on November 16, 2022, against Defendants Ambassador Personnel, Inc. and Nashville Wire Products Manufacturing Company, LLC.

11. The EEOC issued "Notice of Right to Sue" letters on June 6, 2023, and June 20, 2023, true and correct copies of which are attached as Exhibits A and B.

### IV. PARTIES

12. Plaintiff Pamela Terrell ("Ms. Terrell") is a resident of Tennessee who resides in Davidson County.

13. Ambassador Personnel, Inc. ("Ambassador") is a Georgia for-profit corporation with its principal place of business at 314 Broad Street, Thomasville, GA 31792. Defendant may be served with process through its registered agent, C T Corporation System, 300 Montvue Road, Knoxville, TN 37919-5546.

14. Defendant Nashville Wire Products Manufacturing Company, LLC ("Nashville Wire") is a Tennessee limited liability company. Nashville Wire may be served with process through its registered agent: Steven C. Rollins, 199 Polk Avenue, Nashville, TN 37210-4629.

15. Defendant Mid-South Wire Company, LLC ("Mid-South Wire," and together with Nashville Wire, the "Nashville Wire Defendants") is a Tennessee limited liability company and is,

upon information and belief, the parent company of Nashville Wire. Mid-South Wire may be served with process through its registered agent: John T. Johnson Jr., 199 Polk Avenue, Nashville, TN 37210-4629.

16. At all relevant times, Defendants have each continuously been an "employer" under Title VII and the THRA.

17. At all relevant times, Defendants each employed at least fifteen individuals nationally and at least eight individuals in Tennessee.

## V. FACTUAL ALLEGATIONS

### A. Defendants Nashville Wire & Mid-South Wire

18. Defendants Nashville Wire Products Manufacturing Company, LLC and Mid-South Wire Company, LLC together operate a wired products manufacturing and distributing business, which is headquartered in Nashville, Tennessee. Their annual revenues exceed $300,000,000 per year.

19. Upon information and belief, Nashville Wire and Mid-South Wire operate as a closely held, family-owned business and together constitute a "joint employer" under Title VII. Nashville Wire selects and pays workers and provides the supervision, equipment, supplies, and materials necessary to perform the work. Meanwhile, Mid-South Wire drafts and controls all corporate policies and procedures, including employment-related policies, requires Nashville Wire to implement such policies and procedures in the workplace, and has authority to remove or terminate employees from job assignments or otherwise affect the terms and conditions of their employment.

20. Nashville Wire and Mid-South Wire also have unified human resources operations. At all relevant times, the same individual served as the Director of Human Resources for the Nashville Wire Defendants and their transportation company, M-S Logistics, LLC.

### B. Defendant Ambassador Personnel, Inc.

21. Defendant Ambassador Personnel, Inc. is a full-service staffing, human resources, and payroll company that recruits temporary and direct-hire employees for a broad range of clients and roles.

22. In this capacity, Defendant itself employs workers, who are then jointly employed by Defendant's customer companies, including the Nashville Wire Defendants, in temporary or direct-hire roles.

23. According to its website, Ambassador has physical locations in eight states (including Tennessee) and serves customers in 28 states.

24. Until at least October 2022, Ambassador operated a physical location at 3441 Lebanon Pike, Suite 122, Hermitage, Tennessee 37076, where Ms. Terrell was hired and ultimately discharged.

25. All three Defendants were jointly responsible for preventing discriminatory hiring practices. All acts and failures to act alleged herein were duly performed by and attributable to all Defendants, and each Defendant participated in, approved, and/or ratified the unlawful acts and omissions by the other. Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and/or severally.

### C. Plaintiff Pamela Terrell Is Subject to Intentional Gender Discrimination

26. In or about August 2022, the Nashville Wire Defendants hired Ambassador to recruit and hire job applicants on its behalf for multiple job vacancies in Tennessee.

27. Upon information and belief, Nashville Wire struggled to fill and retain employees in certain positions due to their physical nature. As a result, it utilized multiple temporary staffing

agencies to fill vacant positions, including Defendant.

28. On or about October 5, 2022, Pamela Terrell applied for a labor position with Ambassador and the Nashville Wire Defendants.

29. Ms. Terrell possessed all necessary qualifications and experience for the available positions at Nashville Wire.

30. To further ensure Ms. Terrell understood and was qualified for positions at Nashville Wire, Ambassador Recruiter Cynthia Smith went over the required job duties, including the physical requirements, which included overhead team lifting of up to 50 pounds.

31. Ms. Terrell understood these requirements and assured Ms. Smith that she could fulfill all the required job duties.

32. Ms. Terrell completed all onboarding paperwork and passed a drug test and background check.

33. Based on these qualifications, Ms. Smith sent Ms. Terrell to Nashville Wire's Human Resources Manager, Angie Hollis, as a qualified candidate for open positions. This communication included only Ms. Terrell's experience and qualifications, not her name or gender.

34. Ms. Hollis responded within minutes by accepting Ms. Terrell's candidacy, stating, "Can *he* start today at 3:30 p.m.? . . . . If so, we will need *his* signed orientation sheet" (emphasis added).

35. Ms. Smith responded that she would call Ms. Terrell right away and attached Ms. Terrell's completed orientation sheet, which included her name.

36. Ms. Smith then contacted Ms. Terrell and informed her she had received the position. Ms. Terrell was provided with a debit card on which her employment earnings would be loaded.

37. However, upon receiving the orientation sheet that displayed Ms. Terrell's name, Ms. Hollis did an about-face. She stated, in writing, **"I am not usually successful with ladies in this job"** (emphasis added).

38. Ms. Hollis also referenced a prior conversation she had with Ambassador representatives, in which she had instructed them that she did not hire women for labor positions, saying, "I thought we talked about this last week during our tour."

39. Ms. Smith assured Ms. Hollis that Ms. Terrell was aware of the requirements of the position, had read the job description, "was very adamant she could perform," and was "excited to start tomorrow."

40. Despite the fact that Ms. Terrell could perform the position, Ms. Hollis stated, "I don't need her to start tomorrow. **I don't want to get someone hurt and I am afraid that's what is going to happen**" (emphasis added).

41. Realizing Ms. Hollis was discriminating against female candidates, Ms. Smith forwarded these emails to Ambassador's Nashville Office Manager Melanie Suarez Cardona, who in turn forwarded the emails to Ambassador's Regional Vice President Jennifer Mason. The same day, Ms. Mason forwarded the emails to Ambassador executives, including Chief Operating Officer Lesley Wilson and Vice President of Human Resources Madeline Torres-Goff.

42. Eventually, Ms. Smith was instructed to tell Ms. Terrell that the position was "no longer available" and revoke her job offer.

43. In doing so, Ambassador adopted, ratified, and implemented its clients' unlawful employment practices as well as committing its own act of discrimination against Ms. Terrell.

44. Ambassador conducted a risk-reward calculation that balanced violating the law (and being caught) versus losing the Nashville Wire Defendants' business.

45. During a conference call with its Nashville office personnel on October 11, 2022, Ambassador executives made clear that the company maintains a pattern or practice of doing whatever necessary to follow their corporate client's instructions, even if that means committing discrimination, because "our business is providing a service to our customers," not "dictating to our customers how they run their business."

46. Ambassador's Chief Operating Officer Lesley Wilson admitted she understood the risk of discrimination against Ms. Terrell because Ambassador "get[s] sued all the time." However, she insisted that they had to "weigh the risk" of breaking the law versus potentially losing business. She called Ambassador's intentional violation of anti-discrimination laws a "mitigated risk."

47. Defendants intentionally and unlawfully screened out or revoked job offers to Ms. Terrell and other female job applicants based on their sex and without any form of individualized assessment other than discriminatory assumptions based on the applicant's sex (female).

48. Defendants have a uniform employment practice of screening out female job applicants and employing male job applicants for positions based on their sex.

49. Ambassador has a uniform employment practice of adopting, ratifying, and implementing its clients' unlawful employment practices.

50. Despite there being several qualified female candidates in the pipeline, Defendants never offered Ms. Terrell or any other female candidate a fitness for duty test or other ability to prove that she could safely perform the work required and offered no bona fide occupational qualification or business necessity for their refusal to hire women.

51. Instead, Defendants refused to hire Ms. Terrell and other female candidates based on gender stereotyping of women as being unable to perform physically demanding work.

52. These intentional, unlawful employment practices were sufficiently frequent to be Defendants' regular procedure or practice and constitute a pattern or practice of discrimination in violation of Title VII and the THRA.

53. Accordingly, Ms. Terrell brings this class action on behalf of herself and all similarly situated female job applicants of Defendants. This action seeks to end Defendants' intentional, discriminatory policies, patterns, and practices, and to make the class whole by requesting the remedies delineated herein.

## VI. CLASS ACTION ALLEGATIONS

54. Ms. Terrell re-alleges the foregoing paragraphs as though fully set forth herein.

55. Ms. Terrell brings this Class Action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of all persons similarly situated (the "Class").

56. Ms. Terrell proposes the following Class definition, subject to amendment as appropriate:

> All qualified female job applicants who, at any time on or after January 20, 2022, through the resolution of this action, (1) applied for positions in Tennessee through Ambassador and were not referred, not hired, or had such referral or job offers revoked, or (2) applied for positions with the Nashville Wire Defendants, either directly or through a staffing agency, and were not hired or had job offers revoked.

57. Ms. Terrell reserves the right to amend the definition of the Class based on discovery or legal developments.

58. Ms. Terrell is a member of the Class she seeks to represent.

59. Ms. Terrell does not know the exact number of members in the Class, but upon information and belief, the number of Class members is greater than can be feasibly addressed through joinder. Defendant Ambassador Personnel, Inc. employs over 2,200 employees and the

9

Case 3:23-cv-00653     Document 1     Filed 06/27/23     Page 9 of 15 PageID #: 9

Nashville Wire Defendants employ several hundred employees and utilized multiple temporary staffing agencies to fill vacant positions during the relevant time period.

60. There are well defined, nearly identical questions of law and fact affecting all Class members. Those common questions of law and fact include, but are not limited to, the following:

  i. Whether Defendants' policies, pattern, or practices discriminate against female job applicants;

  ii. Whether Defendants have failed to implement policies and procedures to prevent sex discrimination in the hiring or referral process;

  iii. Whether Defendants systematically favor men for hiring or referral;

  iv. Whether Defendants' policies and practices violate Title VII and/or the THRA;

  v. Whether equitable remedies, injunctive relief, compensatory damages, punitive damages, and other remedies for the Class are warranted.

61. The questions of law and fact involving the Class claims predominate over questions which may affect individual Class members. Defendants' apparent policy and practice of automatically rejecting female candidates—without regard for individual women's qualifications or abilities—makes it likely there will be few, if any, questions of law or fact affecting only individual class members.

62. Likewise, Defendants' policy and practice of automatic discrimination, without regard for individual qualifications, makes class action superior to other available methods for fairly and efficiently adjudicating this controversy, for ensuring economies of time, effort, and expense, and for promoting uniformity of decisions for similarly situated individuals.

63. As the documentary evidence clearly shows Ms. Terrell was not referred or hired, and/or had such referral or employment revoked, by Defendants based on her sex (female), her claims are typical of each Class member.

64. Ms. Terrell will fairly and adequately represent and protect the interests of the members of the Class.

65. Ms. Terrell has retained counsel competent and experienced in employment discrimination litigation and class-based and multi-plaintiff actions.

66. Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Ms. Terrell and the Class as a whole. The Class Members are entitled to injunctive relief to end Defendants' common, uniform, and discriminatory employment policies and practices. Upon information and belief, Defendants have computerized records of all job applicant data that will make identification of specific Class Members relatively simple.

67. Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. The Class Members have been damaged and are entitled to recovery as a result of Defendants' common, uniform, unfair, and discriminatory policies and practices. Defendants have computerized data, payroll data, and personnel data that will make calculation of economic damages for specific Class Members relatively simple. The propriety and amount of punitive damages are based on Defendants' intentional and continuous conduct, making these issues common to the Class.

## VII. CAUSES OF ACTION
### (On Behalf of Ms. Terrell and all Class Members)

### SEX DISCRIMINATION IN VIOLATION OF TITLE VII AND THE THRA

68. Ms. Terrell re-alleges the foregoing paragraphs as though fully set forth herein.

69. These claims are brought by Ms. Terrell on behalf of herself and the Class she seeks to represent.

70. Title VII and the THRA make it unlawful for employers to discriminate against any individual with respect to her terms, conditions, or privileges of employment because of such individual's sex.

71. Title VII and the THRA prohibit an employer from failing or refusing to hire, discharging, or limiting, segregating, or classifying an individual based on her sex. 42 U.S.C. § 2000e-2(a); Tenn. Code Ann. § 4-21-401(a).

72. Title VII further prohibits an employment agency from failing or refusing to refer or otherwise discriminating against an individual for employment based on her sex and from classifying or referring an individual for employment based on his sex. 42 U.S.C. § 2000e-2(b).

73. As the Supreme Court has recognized, "In passing Title VII, Congress made the simple but momentous announcement that sex, race, religion, and national origin are not relevant to the selection, evaluation, or compensation of employees . . . . Congress' intent to forbid employers to take gender into account in making employment decisions appears on the face of the statute." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 239 (1989).

74. Defendants have violated the principles of equality, opportunity, and free choice at the heart of Title VII and the THRA by engaging in an intentional and systematic policy, pattern, and/or practice of discriminating against their female employees and job applicants.

12

Case 3:23-cv-00653   Document 1   Filed 06/27/23   Page 12 of 15 PageID #: 12

75. Defendants have intentionally discriminated against Ms. Terrell and the Class in the terms, conditions, and privileges of employment, in violation of Title VII and the THRA by, among other things, failing or refusing to hire, discharging, or limiting, segregating, or classifying an individual based on their sex (female).

76. Moreover, by refusing to refer and/or revoking referrals for Ms. Terrell and the Class based on their sex (female) and by hiring and referring employees based on their sex (male), Defendant Ambassador violated Title VII.

77. Defendants are responsible for the actions of their managerial agents.

78. Defendants' conduct as described in this Complaint was intentional, malicious, and/or recklessly indifferent to Ms. Terrell and the Class Members' federally protected rights, entitling them to punitive damages under Title VII.

79. As a direct result of Defendants' intentional, discriminatory conduct, Ms. Terrell and the Class have lost income and other privileges and benefits of employment; suffered embarrassment, humiliation, emotional distress and anxiety, inconvenience, and loss of enjoyment of life; and have incurred attorneys' fees, costs, and litigation expenses.

## VIII. RELIEF REQUESTED

80. WHEREFORE, Ms. Terrell and the Class respectfully request:

   A. Certification of the case as a proper class action pursuant to Federal Rule of Civil Procedure 23, and establishing an appropriate Class (and any Subclasses the Court deems appropriate);

   B. Designation of Ms. Terrell as a representative of the Class;

   C. Designation of Ms. Terrell's counsel of record as Class Counsel;

D. A declaratory judgment that the practices complained of herein are unlawful and violate Title VII and the THRA;

E. An order that Defendants institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees regardless of gender, and that it eradicate the effects of their past and present unlawful employment practices;

F. An order requiring Defendants to develop and institute objective standards for making hiring decisions;

G. An order appointing a monitor to ensure that Defendants comply with the injunction provisions of any decree that the Court orders;

H. An order retaining jurisdiction over this action to ensure that Defendants comply with such decree;

I. Back pay (including interest) and damages for lost benefits;

J. Compensatory damages for embarrassment, humiliation, emotional distress and anxiety, inconvenience, and loss of enjoyment of life;

K. Front pay and damages for lost benefits;

L. Punitive damages to deter future conduct;

M. Attorneys' fees, costs, and litigation expenses;

N. Prejudgment interest and, if applicable, post judgment interest; and

O. Such other and further legal or equitable relief to which they may be entitled.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Ms. Terrell demands a trial by jury in this action.

Respectfully submitted,

*s/ Curt M. Masker*
Caraline E. Rickard, TN Bar No. 034414
Curt M. Masker, TN Bar No. 037594
RICKARD MASKER, PLC
810 Dominican Drive, Suite 314
Nashville, Tennessee 37228
Telephone: (615) 200-8289
Facsimile: (615) 821-0632
caraline@maskerfirm.com
curt@maskerfirm.com

*Attorneys for Ms. Terrell
and the Proposed Class*