# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

PAMELA TERRELL,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　Plaintiff,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)　　　NO. 3:23-cv-0653
v.　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)　　　JUDGE CAMPBELL
AMBASSADOR PERSONNEL, INC., ET　　)　　MAGISTRATE JUDGE EVANS
AL.,　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　Defendants.　　　　　　　　)

## MEMORANDUM

Pending before the Court is Plaintiff's Motion for Class Certification (Doc. No. 48). Defendants Ambassador Personnel, Inc. ("Ambassador") and Nashville Wire Products Manufacturing Company, LLC and Mid-South Wire Company, LLC (collectively, "Nashville Wire") filed responses in opposition (Doc. Nos. 53, 55) and Plaintiff filed replies (Doc. Nos. 57, 58). For the reasons set forth below, Plaintiff's Motion (Doc. No. 48) will be **DENIED** without prejudice.

## I.　　　BACKGROUND

Defendant Nashville Wire operates a wired products manufacturing and distributing business. (Doc. No. 1 ¶ 18). Ambassador is a temporary staffing agency that recruits temporary and direct-hire employees for various companies and positions. (*Id.* ¶ 21). Ambassador hires individuals who are jointly employed by its clients, including Nashville Wire, in temporary or direct-hire positions. (*Id.* ¶ 22).

On October 5, 2022, Plaintiff applied for a labor position with Ambassador and Nashville Wire. (*Id.* ¶ 28).  Plaintiff contends she possessed all necessary qualifications and experience for the position. (*Id.* ¶ 29). Ambassador recruiter Cynthia Smith discussed the required job duties for

the position, including the physical requirements which involved overhead team lifting of up to 50 pounds. (*Id.* ¶ 30). Plaintiff assured Ms. Smith that she could fulfill all the required job duties. (*Id.* ¶ 31). Ms. Smith referred Plaintiff to Nashville Wire's Human Resources Manager, Angie Hollis, as a qualified candidate for open positions, which included only Plaintiff's experience and qualifications, not her name or gender. (*Id.* ¶ 33). Ms. Hollis responded "[c]an he start today at 3:30 p.m.? … if so, we will need his signed orientation sheet." (*Id.* ¶ 34). Ms. Smith responded that she would call Plaintiff immediately and attached Plaintiff's completed orientation sheet, which included her name. (*Id.* ¶ 35). Ms. Smith then called Plaintiff and informed her she had received the position, and she was given a debit card on which her employment earnings would be loaded. (*Id.* ¶ 36).

After receiving Plaintiff's orientation paperwork, Ms. Hollis informed Ms. Smith that she was "not usually successful with ladies in this job" and asked "do you see [Plaintiff] as a fit for this position with constant overhead heavy lifting for a 10 hour shifts – the parts we are currently painting are between 50 and 75 pounds each." Smith assured Hollis that Plaintiff was aware of the position requirements and had read the job description and was "adamant she could perform" and was "excited to start tomorrow." (*Id.* ¶ 39). Hollis then stated "I don't need her to start tomorrow" and "I don't want to get someone hurt and I am afraid that's what is going to happen." (*Id.* ¶ 39).

Smith sent her correspondence with Hollis to Ambassador's Nashville Office Manager, who in turn forwarded the correspondence to Ambassador's Regional Vice President, Jennifer Mason. (*Id.* ¶ 41). Ms. Mason emailed the correspondence to Ambassador executives with the subject line "Question…when client denies assignment based on gender." (Doc. No. 48-8 at PageID# 451; Doc. No. 1 ¶ 41). Ambassador's Vice President of Human Resources, Madeline Torres-Goff, stated in writing that "[d]enying this job to [Plaintiff] may have legal implications for

2

Ambassador as well as the client….we must allow the [Plaintiff] to start." (Doc. No. 48-8 at PageID# 476). Smith was ultimately ordered to revoke Plaintiff's job offer, which Smith did. (*Id.* ¶ 42).

Plaintiff filed this putative class action against Defendants and brings claims for sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq.* ("THRA").

Plaintiff filed the pending Motion for Class Certification (Doc. No. 48) on April 18, 2025, and moves to certify the following class:

> All female job candidates who, during the period from January 20, 2022, through the final date of judgment:
>
> (1) Met the minimum qualifications for positions at Nashville Wire's Tennessee facilities for which Angie Hollis had hiring authority; and either
>
> (2) Applied to Ambassador Personnel, Inc. and (a) were not referred to Nashville Wire; (b) were not hired by Nashville Wire; or (c) had a referral or job offer with Nashville Wire revoked (the "Ambassador Subclass"); or
>
> (3) Applied to a staffing agency or directly to Nashville Wire Products Manufacturing Company, LLC and (a) were not referred to Nashville Wire; (b) were not hired by Nashville Wire; or (c) had a referral or job offer with Nashville Wire revoked (the "Nashville Wire Subclass").

Doc. No. 49 at 11.

## II.     STANDARDS GOVERNING CLASS CERTIFICATION

To certify a class, the Court must be satisfied that the requirements of Federal Rule of Civil Procedure 23(a) and at least one of Rule 23(b)'s provisions are met. *See Comcast v. Behrend*, 569 U.S. 27, 33-34 (2013). Rule 23(a) establishes four requirements for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b), in turn, provides in pertinent part that when the

requirements of Rule 23(a) are met a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b).

The party seeking class certification bears the burden of showing that the requirements for class certification are met. *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016). The decision whether to certify a class is committed to the sound discretion of the district judge and turns on the particular facts and circumstances of each individual case. *See In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). "Similarly, the Court has discretion to conduct an evidentiary hearing on a motion for class certification." *Desai v. Geico Cas. Co.*, 574 F. Supp. 3d 507, 527 (N.D. Ohio 2021).

### III.    ANALYSIS

#### A. Ascertainability

Before a court may certify a class pursuant to Rule 23, "the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young*, 693 F.3d at 537–38 (internal citation omitted). "[A] class definition is impermissible where it is a 'fail-safe' class, that is, a class that cannot be defined until the case is resolved on its merits. *See Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011) ("Either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment.")." *Id.* at 538; *Rose v. Saginaw Cnty.*, 232 F.R.D. 267, 271 (E.D. Mich. 2005) (cleaned up) ("As explained by other district courts: Rule 23(a) also contains an implicit requirement that the class be adequately defined and  clearly  ascertainable…While  the  precise  numbers  of

4

proposed class members need not be established,…the class description must be sufficiently definite for the court to ascertain member status… A precise definition allows the Court to determine who would be entitled to relief, who would be bound by a judgment, and who is entitled to notice of the action.").

> The Sixth Circuit considers the following when evaluating ascertainability:
>
> For a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria. In some circumstances, a reference to damages or injuries caused by particular wrongful actions taken by the defendants will be sufficiently objective criterion for proper inclusion in a class definition. Similarly, a reference to fixed, geographic boundaries will generally be sufficiently objective for proper inclusion in a class definition.

*Id.* at 538–39.

Here, Plaintiff argues that the proposed class definition makes it "relatively straightforward" to "establish class members through objective criteria" because it is subject to temporal and geographic boundaries and Defendants' records reveal which individuals they considered for employment and whether individuals were referred or hired.

In response, Ambassador argues that the proposed Ambassador Subclass definition is not clearly defined and ascertainable because it includes female candidates who applied with Ambassador and were referred to a client other than Nashville Wire and were hired by that client company, as well as female candidates that Ambassador referred to Nashville Wire but that Nashville Wire did not hire. Nashville Wire does not address the ascertainability requirement.

The Court finds that the Ambassador Subclass definition proposed by Plaintiff is not sufficiently definite such that it is administratively feasible to determine whether a particular individual is a member of the proposed class and lends itself to a host of individualized inquiries that are likely to result in discovery for each potential class member, including whether they met

the minimum qualifications for the position for which they were applying, whether they were actually referred to Nashville Wire, whether they were referred to Nashville Wire along with other client companies and hired by another client company, whether they had an offer with Nashville Wire revoked, and whether they applied directly to Nashville Wire or through a staffing agency, just to name a few. Accordingly, the Court finds that the Ambassador Subclass definition proposed by Plaintiff makes it difficult to ascertain whether a particular individual is a member of the proposed class.

Further, the Court finds that the proposed Nashville Wire Subclass is overly broad as it includes any "positions at Nashville Wire's Tennessee facilities for which Angie Hollis had hiring authority" despite that Plaintiff acknowledges that for purposes of class certification the parties "have concentrated on the following positions, all of which were filled by Ms. Hollis: Entry Level Machine Operator (also known as Paint Line, Machine Operator, 2, or MH1001), Machine Operator (also known as Skilled Machine Operator, Machine Operator 3, MH1002, or MH1003), Material Handler (also known as Forklift Operator or MH1032), and Shipping Clerk (also known as Shipping/Receiving Clerk Administrative Clerk) at Nashville Wire's Bordeaux and Springfield, Tennessee facilities." (Doc. No. 49 at 8). Similarly, the proposed Nashville Wire Subclass includes female candidates that applied to a staffing agency but were not referred to Nashville Wire. Nashville Wire contends that "[i]t is entirely speculative as to whether or not candidates who were never referred would be denied the position" and "Nashville Wire cannot possibly have harmed an applicant of whom it had no knowledge." (Doc. No. 53 at 15). The Court agrees.

Additionally, as correctly pointed out by Defendant Ambassador, the proposed definition for the Ambassador Subclass includes female candidates referred by Ambassador to a client company other than Nashville Wire as well as female candidates referred by Ambassador to

6

Nashville Wire but whom Nashville Wire chose not to hire, which the Court also finds overly broad.

Accordingly, the Court finds that the class definitions proposed by Plaintiff and the criteria outlined by Plaintiff is not sufficiently definite such that it is administratively feasible to determine whether a particular individual is a member of the proposed classes and fails to meet the ascertainability requirement. The Court can deny certification on this ground alone but finds it helpful to also address the numerosity requirement of Rule 23(a)(1).

**B. Numerosity**

As an initial matter, Nashville Wire stipulated to the numerosity requirement. Plaintiff contends that the proposed Ambassador Subclass satisfies the numerosity requirement in Rule 23(a)(1). To satisfy the numerosity requirement, Plaintiff must show that the numerosity of injured persons makes joinder of all class members impracticable. Fed. R. Civ. P. 23(a)(1). "Generally, the number of members of the proposed class, if more than several hundred, easily satisfies the requirements of Rule 23(a)(1)." *Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cnty., Tennessee v. Momenta Pharms., Inc.*, 333 F.R.D. 390, 403 (M.D. Tenn. 2019) (citing *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004); *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 n. 1 (6th Cir. 1997) (joinder of parties impracticable for class with over 1100 members and "[t]o reach this conclusion is to state the obvious")).

Here, Plaintiff contends that she has identified more than 40 potential class members for the Ambassador Subclass because Plaintiff's expert "relies on 106 women who Ambassador reported were eligible for referral to Nashville Wire" and "Ambassador identified up to 198 women who were referred for placements in Tennessee during the class period." (Doc. No. 49 at 15). Plaintiff also contends that she has identified at least 168 women who were named by Ambassador

7

or received emails about job openings between August and October 2022 which is during the time period Ambassador was referring candidates to Nashville Wire.

However, the number of female candidates Ambassador reported as eligible for referral to Nashville Wire, whom Ambassador referred for placements in Tennessee during the class period, and whom Ambassador identified or received emails during the relevant time period does not automatically entitle those individuals to participate in the proposed classes. Instead, to meet the numerosity requirement, Plaintiff must provide evidence of the number of female candidates who met the minimum qualifications for positions at Nashville Wire's Tennessee facilities for which Angie Hollis had hiring authority and who either applied to Ambassador and were not referred to or hired by Nashville Wire or had a referral or job offer with Nashville Wire revoked. Plaintiff has not done so.[1]

Plaintiff failed to provide evidence of the number of candidates that fit within the proposed class definitions, and accordingly, the Court finds Plaintiff has failed to meet the numerosity requirement.

### IV.    CONCLUSION

For the reasons stated above, Plaintiff's motion (Doc. No. 48) is **DENIED** without prejudice to refiling.

---

[1]    Notably, Plaintiff states that "temporary staffing agencies, including Ambassador, [] referred 1,175 male applicants and only 25 female applicants" to Nashville Wire for the positions at issue in Plaintiff's motion between January 2022 and January 2025. Plaintiff's Expert, Dr. Charles Baum, states that "Ambassador received 144 male applicants and 106 female applicants" and that Ambassador "referred 7 males and 4 females to Nashville Wire []." It appears that based on this evidence, Plaintiff contends that 106 female candidates "were eligible for referral to Nashville Wire." (Doc. No. 49 at 15). However, Plaintiff fails to demonstrate that each of the candidates that applied to Ambassador were actually eligible for referral to Nashville Wire. Plaintiff also fails to provide evidence of whether these female applicants were referred to or hired by another client company, which the Court finds impacts both the number of putative class members and Plaintiff's claims in this case.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE

9